## ADAMS ET AL. *v.* MERRILL.

[No. 6,146. Filed June 25, 1908. Rehearing denied January 27, 1909. Transfer denied February 4, 1910.]

1. DEEDS.—*Granting Clause.*—A deed reciting that the grantor and his wife "convey and warrant" to the grantee a certain tract of land, conveys the fee-simple title to the grantee (§3958 Burns 1908, §2927 R. S. 1881), the words "heirs" and "assigns" being unnecessary (§3960 Burns 1908, §2929 R. S. 1881). pp. 320, 327, 328.

2. DEEDS.—*Granting Clause.*—*Limiting Scope of.*—The use of the words "convey and warrant" in the granting clause of a deed may be controlled by modifying and limiting words used in the habendum clause of such deed. pp. 320, 328.

3. DEEDS.—*Granting Clause.*—*Limiting.*—A deed by which the grantors "convey and warrant to Luzette Merrill [certain land], said Luzette Merrill * * * to have and to hold the use of the lands * * * during her natural life, and upon her death the absolute title in fee simple * * * shall vest in the heirs of the body of said Luzette Merrill" and that "in case said Luzette Merrill shall die without leaving any heirs of her body living at the time of her decease, then upon the death of said Luzette Merrill the title to one-third of said lands shall vest in Ira Merrill, the husband of said Luzette Merrill, and the title to the remaining two-thirds of said land shall vest in the heirs of the body of Martha K. Adams, sister of said Luzette Merrill," gives to Martha K. Adams, or, if dead, to her children, two-thirds of

such land, and to the husband of Luzette Merrill one-third thereof, in the event of the death of Luzette Merrill leaving no living child. pp. 322, 323, 324, 325.

4.  DEEDS.—Construction.—Words.—Courts will give effect to all of the words used in a deed, and give them their ordinary meaning when possible. pp. 323, 329.

5.  DEEDS.—Remainders.—Limiting after Grant of Estate Tail.— A valid remainder may be limited after the grant of an estate tail (§3994 Burns 1908, §2958 R. S. 1881). p. 323.

6.  DEEDS.—Remainder with Double Aspect.—A deed may provide, on the happening of a designated contingency, for the gift of a remainder in fee to certain persons, and to others upon the failure of the happening of such contingency. p. 323.

7.  WORDS AND PHRASES.—"Heirs of the Body."—Deeds.—The words "heirs of the body," as used in a deed giving certain land to a daughter and upon her death to her children and "heirs of the body" of said daughter then living, import children. p. 324.

8.  DEEDS.—Remainder to Children.—Shelley's Case.—A deed giving to the grantors' daughter a life estate, remainder to her children and "the heirs of the body" of such daughter then living, gives a vested remainder to such children by purchase and not by descent. p. 325.

9.  DESCENT AND DISTRIBUTION.—Contingent Remainder.—Adopted Children.—An adopted child takes the interest of its adopting parents in a contingent remainder of land. p. 325.

10. ESTATES.—"Property."—Statutes.—The word "property," as used in §1356 Burns 1908, §1285 R. S. 1881, providing that real "property" shall include "lands, tenements and hereditaments," includes every species of title, inchoate or complete, and every right which lies in contract, executory or executed. p. 326.

11. DEEDS.—"Children."—"Heirs of the Body."—Adopted Child.— An adopted child takes no title under a deed to his adoptive mother and her "children" and the heirs of her body living at her death. p. 326.

12. DESCENT AND DISTRIBUTION.—Adopted Children.—Adopted children inherit the same as other children. p. 326.

13. DEEDS.—Warranty.—"Heirs."—At the common law the word "heirs" was necessary to a deed in granting an absolute title, the failure to use which resulted in the creation of a life estate. p. 328.

14. DESCENT AND DISTRIBUTION.—Heirs.—Living Persons.—A living person has no heirs. p. 329.

From Steuben Circuit Court; Joseph W. Adair, Special Judge.

Suit by Martha K. Adams and others against Alvah B.

Merrill. From a decree for defendant, plaintiffs appeal. *Reversed.*

*Brown & Carlin* and *Frank M. Powers,* for appellants.

*Walter Olds* and *Cyrus Cline,* for appellee.

MYERS, J.—The appellants by their complaint and the appellee by his cross-complaint sought to quiet title to certain real estate in Steuben county. The case involves the construction of a certain deed of conveyance of said real estate, and the question is presented by the assignment of errors based on the action of the court in overruling appellants' demurrer to the first paragraph of the cross-complaint, and its ruling sustaining the appellee's demurrer to the second paragraph of the second amended complaint.

The plaintiffs Martha K. Adams, William H. Adams, her husband, and their three children, Mabel L. Adams, Earl B. Adams and Myra P. Adams, alleged, in substance, that Lewis Barnard was the owner, on April 18, 1877, of the real estate described, and on that day he and his wife, Hattie Barnard, executed to Luzette Merrill the deed in controversy, portions of which are as follows:

"This indenture witnesseth that Lewis Barnard and Hattie Barnard, his wife, both of Steuben county, in the State of Indiana, convey and warrant to Luzette Merrill, of Steuben county, in the State of Indiana, for the sum of $500, the following real estate in Steuben county, in the State of Indiana, to wit: * * * By this conveyance, said Luzette Merrill is to have and to hold the use of the lands above described during her natural life, and upon her death the absolute title in fee simple to the above-described lands shall vest in the children and heirs of the body of said Luzette Merrill. In case said Luzette Merrill shall die without leaving any heirs of her body living at the time of her decease, then upon the death of said Luzette Merrill the title to one-third of said lands shall vest in Ira Merrill, the husband of said Luzette Merrill, and the title to the remaining two-thirds of said land shall vest in the heirs of the body of Martha K. Adams, sister of said Luzette Merrill."

At the time of the execution of the deed in question the grantor was an old man, in poor health, and Luzette Merrill and Martha K. Adams were his only children then living. The conveyance was made and intended by the grantor, and was accepted by the grantee, as a gift in consideration of love and affection. On the same day Lewis Barnard executed to Martha K. Adams a deed conveying other real estate owned by him. The consideration of $500, mentioned in the deed to Luzette Merrill, was not paid, nor was any part of it paid, nor was it intended by the parties at the time of the execution of the deed that said pecuniary consideration or any part of it should be paid. The land so conveyed to Luzette Merrill was at the time of the conveyance of the fair cash value of $10,000. The deed was duly recorded November 13, 1877. The grantor and his wife, who joined in the conveyance, were divorced on his petition to the Steuben Circuit Court on February 6, 1878, and Lewis Barnard, the grantor, died intestate, December 17, 1883, leaving Luzette Merrill and Martha K. Adams his only children and heirs at law. Ira Merrill, named in the deed, was the husband of Luzette Merrill at the time of the execution of the deed and thereafter until February 7, 1898, when he died intestate. At the date of the deed Luzette Merrill had a daughter, her only child, Belle Merrill, born August 5, 1876, who died intestate October 5, 1894, leaving no children or lineal descendants, and she never was married. Luzette Merrill died intestate May 28, 1902, leaving no children or heirs of her body surviving her, and she never married after the death of Ira Merrill. On September 9, 1896, on the petition of Ira Merrill and Luzette Merrill, it was adjudged and decreed by the Steuben Circuit Court that John Alva Bolin and his sister, Lula May Bolin, be, and by said judgment and decree they were, adopted by Ira Merrill and Luzette Merrill as heirs at law, and their names were changed to Alva B. Merrill and Lula B. Merrill. Said adopted heirs were not related by consanguinity to Lewis Barnard, Lu-

zette Merrill nor Ira Merrill. Lula B. Merrill died intestate December 20, 1900, unmarried and leaving no children nor lineal descendants. Said Alva. B. Merrill was made a defendant, and he is the sole appellee here. It was alleged that he was claiming some interest in the real estate under and by virtue of said adoption, and not otherwise, which claim was alleged to be adverse to the claim of the appellants, unfounded, and a cloud upon their title. It was further shown that the appellant William H. Adams, at the time of the execution of the deed, was, and he still continued to be, the husband of appellant Martha K. Adams, mentioned in the deed, and is still living, and the other appellants here, Mabel L. Adams, Earl B. Adams and Myra P. Adams, were the only children and "heirs of the body" of Martha K. Adams. Mabel L. Adams was born September 7, 1876, before the execution of the deed, and Lewis Barnard, the grantor, well knew, at the time of the execution of the deed, of the existence of Belle Merrill and Mabel L. Adams. Earl B. Adams was born October 29, 1878, and Myra P. Adams was born May 12, 1883. None of the persons mentioned in the deed and none of the parties to this cause have ever conveyed or alienated or attempted to convey or alienate said lands or any part thereof. Luzette Merrill at the time of said conveyance entered into possession of the lands under and by virtue of the conveyance, and she held possession thereof continuously until her death, when the appellants entered into possession of the lands, and ever since they have been, it was alleged, "the owners in fee simple of the above-described real estate." The cross-complaint of the appellee set forth the facts without essential difference from the averments of the complaint.

It is contended, on behalf of the appellee, that by the premises of the deed the grantor conveyed to Luzette Merrill all the title he had, and she thereby took an absolute title in fee; that the language of the habendum is repugnant to the granting clause, and is void; that if the deed

shall not be so construed, the words "children and heirs of the body," in the deed, designate two classes of persons, and the word "children" carries the title to the appellee, an adopted child, living at the death of Luzette Merrill, otherwise, the words "heirs of the body" must prevail, and by virtue of our statute the deed conveyed the fee simple absolute to Luzette Merrill, and the title passed from her to the appellee by descent.

It is true that by virtue of §3958 Burns 1908, §2927 R. S. 1881, the deed, in the absence of the disposing provisions following the description of the land, referred to in argument as the habendum, would have been sufficient to transfer the title in fee simple to Luzette Merrill, with full covenants. We are therefore to consider what effect, if any, should be ascribed to those provisions following the description. The statute (§3960 Burns 1908, §2929 R. S. 1881) also provides: "It shall not be necessary to use the words 'heirs and assigns of the grantee,' to create in the grantee an estate of inheritance; and if it be the intention of the grantor to convey any lesser estate, it shall be so expressed in the deed."

It is proper to consider whether the grantor, who did not use the words "heirs and assigns" in the deed, expressed his intention to convey any estate less than a fee simple absolute to the first taker. Under the statutes a grantor may use the words "convey and warrant" without using the words "heirs and assigns of the grantee," and yet may effectually express "in the deed," though after the description of the land, as in this deed, his intention to convey an estate less than an estate of inheritance to the first taker. In the case of *Prior* v. *Quackenbush* (1868), 29 Ind. 475, the deed executed in 1837 contained the words "heirs and assigns" of the grantee, and therefore the deed, without more words, would have been sufficient to pass title in fee simple to the grantee; but effect was given to a qualifying clause at the close of the deed, and the first taker was

held to have received a life estate with remainder to two persons named in the qualifying clause, which defined the sense in which the word "heirs" in the preceding portion of the deed was to be taken, and restricted it to the two persons so named in the qualifying clause. There was no conflict between the provisions of the deed, but the meaning of one portion was defined by another portion. In the case of *Carson* v. *McCaslin* (1878), 60 Ind. 334, Abel and his wife by their deed, executed in 1864, granted, bargained, sold and conveyed to "Hervey McCaslin and his heirs and assigns forever" real estate described, "to be held by said Hervey McCaslin for and during his natural life, and to Sarah McCaslin (his now wife) if she be living at the death of said Hervey McCaslin, and to her heirs and assigns in fee simple; and if she be not living at the death of said Hervey McCaslin, then to the heirs and assigns of said Hervey McCaslin forever." The court, considering the deed as a whole, held that there was not "such a repugnance or contradiction between the premises of the deed in question and the habendum as rendered the latter void;" that Hervey McCaslin was to take the land for life at all events, and his heirs the fee, if he should survive his wife, but if she should survive him the fee was to be vested in her.

In the case of *Edwards* v. *Beall* (1881), 75 Ind. 401, the grantors by deed executed in 1869 in its granting part did "convey and warrant" to Celestine Beall and John Beall, her husband, for a sum stated, certain real estate described, to be held by said Celestine as her own property, the husband "having the possession thereof during his lifetime; said possession to return to Mrs. Beall if she survives her husband." It was held that the wife took an estate in fee simple subject to a life estate in the husband.

In the case of *Doren* v. *Gillum* (1893), 136 Ind. 134, by the terms of the deed executed in 1892, the grantors "convey and warrant to Levi Hubbard and Margaret Hubbard,

*   *   * for the sum of,'' etc., certain real estate described, ''to have and to hold the same during their natural lives and each of their natural lives, and then to descend to William H. Hubbard and the heirs of his body.'' It was urged there, as here, that by the words ''convey and warrant,'' title in fee simple was passed, and that '' 'the habendum totally contradicts and is repugnant to the estate granted in the premises,' and hence that the premises govern and the habendum is void.'' But the court held that only a life estate went to Levi and Margaret Hubbard and each of them, and that William H. Hubbard took by purchase a vested remainder.

In the case of *Evans* v. *Dunlap* (1905), 36 Ind. App. 198, the deed executed in 1860 proceeded: ''Jacob Evans, of Madison county, in the State of Indiana, for $1,000 conveys and warrants to James Evans, of Madison county, in the State of Indiana, the following described real estate, situated in Madison county, in the State of Indiana: *   *   * To have and to hold the same during his natural lifetime.'' It was held that a life estate only was conveyed to the grantee. See, also, *Tinder* v. *Tinder* (1892), 131 Ind. 381; *Welch* v. *Welch* (1899), 183 Ill. 237, 55 N. E. 654; *Williams* v. *Hedrick* (1899), 96 Fed. 657, 37 C. C. A. 552.

Turning to the deed in the case at bar, it is plain, under the cases before cited, that after the use of the words ''convey and warrant to Luzette Merrill,'' in the beginning

3. portion of the deed, it was within the power of the grantor, in the portion following the description, to define the estate granted to Luzette Merrill as a life estate only, and to provide for any valid remainder. By legitimate and proper interpretation of that portion of the deed following the description of the land, the meaning, which is to be our guide, is that upon the termination of the life estate, if Luzette Merrill should leave any heirs of her body living at the time of her decease, the title in fee simple should vest in her children and heirs of her body so left living at her

decease; but if she should die without leaving any heirs of her body then living, the title to one-third of the lands should vest, at the death of Luzette Merrill, in Ira Merrill, her husband, and the title to the remaining two-thirds of the land should vest, at the death of Luzette Merrill, in the heirs of the body of Martha K. Adams, sister of Luzette Merrill.

We are to seek to give effect to every word in the deed according to the intention of the parties (*Evans* v. *Dunlap, supra; Goodpaster* v. *Leathers* [1890], 123 Ind. 121; *Tinder* v. *Tinder, supra; Booker* v. *Tarwater* [1894], 138 Ind. 385, 394), and therefore we must not reject arbitrarily the legitimate meaning of the word "children" in the connection in which it is used in the deed. Our statute contemplates that a valid remainder may be limited after what would be an estate tail at common law. §3994 Burns 1908, §2958 R. S. 1881. See *Moore* v. *Gary* (1897), 149 Ind. 51.

In the deed before us, unless Luzette Merrill should leave surviving her heirs of her body alive at the time of her death, no estate was to go to the children and heirs of her body, but in the absence of heirs of her body alive at her death the title absolute was to go, one-third to Ira Merrill and two-thirds to the heirs of the body of Martha K. Adams. In 2 Washburn, Real Property (5th ed.), p. 625, it is said: "Notwithstanding a remainder limited after a remainder in fee would be void, as has been often repeated, yet two remainders may be so limited, though each a fee, as to be good, provided this is so done that only one is to take effect, the one being a substitute for, and not subsequent to, the other. The consequence is, that, if the first takes effect and becomes vested, the other at once becomes void. Such limitation is said to be of a fee with a double aspect. A case illustrative of this proposition is that of *Luddington* v. *Kime* [1697], 1 Raym. 203, where the devise was to A. for life; and if he had male

issue, then to such issue and his heirs; but if A. died without issue male, then to T. B. in fee. Here are two remainders contingent in their character, and both in fee, dependent upon the same particular estate, and to take effect, if at all, upon the determination of that estate; and only one of these can take effect. If A. has issue, the remainder vests at once in such issue, and defeats the limitation of T. B. altogether. On the other hand, if A. dies without issue, T. B.'s remainder at once vests in him, and takes effect as a substitute for the other; neither is by its terms to wait until the other shall have once taken effect, and afterwards been determined."

The limitation to the children and heirs of the body of Luzette Merrill not having taken effect at the termination of the particular estate, she having died without leaving any heirs of her body living at the time of her decease, the other contingent limitation upon the same particular estate took effect, as a substitute, immediately upon the death of Luzette Merrill. Whether it is considered that Luzette Merrill took what at common law would have been an estate tail, or a determinable fee, in either case it was limited to the children and heirs of her body living at her decease, and it must be kept in mind that a valid contingent remainder might be limited over to take effect upon the termination, under the circumstances mentioned in the deed, of the first estate granted; that is, a contingent remainder in fee simple was limited to Ira Merrill and to the heirs of the body of Martha K. Adams. Goodwin, Real Property, pp. 32, 43.

The contingency upon which the remainder was to vest in Ira Merrill and the heirs of the body of Martha K. Adams, was the event of the failure of issue. The phrase, "heirs of the body," was used consistently throughout the deed in the sense of children, issue of the body. The two-thirds part of the land was to "vest in the heirs of the body of Martha K. Adams, sister of said Luzette Mer-

rill." The phrase, "heirs of the body," was here used as *descriptio personarum* of the heirs apparent of the body of Martha K. Adams. The remainder was to vest in them upon the death of Luzette Merrill without heirs of her body then living. Of the two modes recognized by law for the acquiring of estates, "purchase" and "descent," they were to take by the former, and not by the latter. The rule in *Shelley's Case* (1581), 1 Coke *94, has no application here. The three children of Martha K. Adams were the heirs of the body of Martha K. Adams, within the meaning of the grantor. They were living and capable of taking at the time the estate in remainder must vest, the time of the termination of the particular estate.

Under our statute there was no necessity for the use of the words "heirs and assigns" to create an estate of inheritance in these three children. So, also, there was no need of the use of these words to create a like estate in Ira Merrill. See *Chamberlain* v. *Runkle* (1902), 28 Ind. App. 599. We therefore conclude that the appellants, Mabel L. Adams, Earl B. Adams and Myra P. Adams, are entitled to have their title in fee simple to the two-thirds part of the lands in question quieted.

Before the termination of the particular estate of Luzette Merrill, Ira Merrill, her husband, died intestate, one of the owners by purchase, as we have seen, of the contingent remainder in fee simple, and by applying to that interest the rule that "where the person is ascertained who is to take the" contingent "remainder, if it becomes vested, and he dies, it will pass to his heirs." 2 Washburn, Real Property (5th ed.), p. 640. See, also, *Hall* v. *Brownlee* (1905), 164 Ind. 238; *Wendell* v. *Crandall* (1848), 1 N. Y. 491; *Hicks* v. *Pegues* (1852), 4 Rich. Eq. 413. In 4 Kent's Comm. (14th ed.), *261, it is said "that all contingent estates of inheritance, as well as springing and executory uses and possibilities, coupled with an inter-

est, where the person to take is certain, are transmissible by descent, and are devisable and assignable." *Cummings* v. *Stearns* (1894), 161 Mass. 506.

Section 2990 Burns 1908, §2467 R. S. 1881, provides that "the real and personal property of any person dying intestate shall descend to his or her children in equal proportions." Under §1356 Burns 1908, §1285 R. S. 1881, the phrase "real property" includes lands, tenements and hereditaments, including incorporeal hereditaments. "The word 'property,' as used in this statute, as applicable to lands, includes every species of title, inchoate or complete, and embraces the rights which lie in contract, whether executory or executed." *Burt* v. *Hoettinger* (1867), 28 Ind. 214, 218.

Ira Merrill left surviving him his widow, Luzette Merrill, and the appellee, Alvah B. Merrill, an adopted son of both Ira Merrill and Luzette Merrill. The adoption took place after the death of the daughter, Belle Merrill, who was living at the date of the deed, and who died after the death of the grantor. This adopted child cannot be regarded as within the meaning of the grantor in the use of the words "the children and heirs of the body of said Luzette Merrill," or the words "any heirs of her body living at the time of her decease," in the deed, but he was the heir of Ira Merrill and Luzette Merrill by virtue of his adoption. The statute (§870 Burns 1908, Acts 1883, p. 61) provides that "from and after the adoption of such child it shall take the name in which it is adopted and be entitled to and receive all the rights and interest in the estate of such adopting father or mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother." And it has been held that an adopted child inherits from the adopting parents the same as their own child. *Krug* v. *Davis* (1882), 87 Ind. 590; *Bray* v. *Miles* (1899), 23 Ind. App. 432. Therefore, whatever inheritable right existed in the adopting parents descended to

the adopted son·on their death. And as Luzette Merrill died leaving no heirs of her body living, and, as we have seen, Ira Merrill died leaving an interest in the lands in question which would pass to his heir—the adopted son—we are therefore of the opinion that appellee, Alvah B. Merrill, is entitled to the undivided one third of the lands in fee simple, and that his title thereto should be quieted.

Judgment reversed, with instructions to proceed in accordance with this opinion.

Rabb, C. J., Comstock, Hadley and Watson, JJ., concur.
Roby, J., absent.

## On Petition for Rehearing.

Myers, J.—In support of appellee's petition for a rehearing, counsel earnestly and ably argue that the limitation in that portion of the Barnard deed following the description of the real estate should be held void, because of the repugnancy between it and the premises of the deed. They also very respectfully contend that in our original opinion and in *Evans* v. *Dunlap* (1905), 36 Ind. App. 198, we have abrogated the rule stated in the cases of *Chamberlain* v. *Runkle* (1902), 28 Ind. App. 599, and *Lamb* v. *Medsker* (1905), 35 Ind. App. 662. In view of the apparent earnestness of counsel in these matters, we have taken the time carefully to reconsider this case, and, in the hope of making ourselves the better understood, have concluded to add the following observations, although they may appear to be elementary.

It will be proper, as preliminary to what we shall hereafter say, to call attention to the fact that in the case of *Evans* v. *Dunlap, supra,* as in this case, the granting clause was expressed in general terms, while in the two other cases just cited the granting clause contained words of limitation. Keeping in mind this difference between the cases mentioned may result in a better understanding of our theory of this case.

Before the enactment of §3958 Burns 1908, §2927 R. S. 1881, on which counsel base their claim, it was necessary, in order to convey an estate in fee simple, to insert the word "heirs," or other words of limitation, in the premises of the deed, if words of limitation were inserted in the habendum, and it was sufficient to insert words of purchase only in the premises, leaving to the habendum its proper office of the expression of words of limitation. The purpose of the habendum is to limit and define the estate or amount of interest of ownership in the premises granted, as for life or in fee, etc. It was usual, however, to insert in the premises, in connection with the words of grant, the estate or quantity of ownership. If the granting part of the deed contain proper words of limitation, the habendum may be dispensed with entirely; but if the latter be used and the limitation therein be repugnant to the limitation in the premises it will be treated as having no validity or effect. When, however, the grant is indefinite because of its generality in respect to the estate in the lands conveyed, it may be defined, qualified and controlled by the habendum. So the habendum is useful only when the words of grant leave the subject of the extent of ownership open to explanation. A simple grant to a person named, without any particular words of limitation in the premises, leaves the extent of ownership open to explanation. *Evans* v. *Dunlap, supra.* Such a grant, indefinite because of its generality, being without limitation either in the premises or in the habendum, would be construed at common law to mean a grant for life only. *Hadlock* v. *Gray* (1886), 104 Ind. 596, 599; *Lamb* v. *Medsker, supra; Chamberlain* v. *Runkle, supra.* Our statutes (§§3958-3960 Burns 1908, §§2927-2929 R. S. 1881), besides furnishing short forms for deeds of conveyance, make it unnecessary to use the words "heirs and assigns of the grantee" to create an estate of inheritance, but if a lesser estate is intended by the grantor "it shall be so ex-

pressed *in the deed."* (Our italics.) A deed of convey-
ance, which if made before the statute would create an estate
for life by reason of the words of grant being thus general
and indefinite, and there being no words of limitation either
in the granting clause or in the habendum, will under the
statute create in the grantee an estate of inheritance, the
presumption of law in the former case being that the grantor
intended to create an estate for life; whereas under the stat-
ute, an estate of inheritance. But notwithstanding the em-
ployment of such general words of grant in the premises, the
grantor, under the statute, as before its enactment by appro-
priate words of limitation in the habendum, or by subse-
quent appropriate expressions "in the deed," may define
the estate or amount of interest or ownership in the property
granted.

It is true, as pointed out by counsel, that Martha K.
Adams, being still in life, has no heirs of her body in the
technical meaning of those terms; but we cannot
agree that the provision of the deed, that in the event
of the death of Luzette Merrill, without any heirs
of her body living at her decease, then, upon her death
the title to two-thirds of the lands should vest in the heirs
of the body of Martha K. Adams, must be treated as void.
This language "does not designate those who shall take in
indefinite succession, but it designates persons who shall
take the remainder as soon as the life estate ends." *Had-
lock* v. *Gray, supra.* While it is not the purpose of con-
struction to wrest the words of the instrument from
their settled legal meaning by resorting to evidence of
language used by the parties and not inserted in their
written contract, yet the court should seek the sense of the
language actually employed, as the parties intended, and
apply it in accordance with their intent, if such intent be
not opposed to established principles of law. *Fountain
County Coal, etc., Co.* v. *Beckleheimer* (1885), 102 Ind. 76;
*Evans* v. *Dunlap, supra; Hummelman* v. *Mounts* (1882), 87

Ind. 178. If possible, in accordance with established principles, in seeking the meaning of parties the court should proceed upon the theory that they did not intend any of the language employed by them to be absurd or meaningless, and did not propose to do a vain and useless thing. 3 Washburn, Real Property (6th ed.), §2271. The same author also says (§2267) that "comparatively few deeds are made in which there are not either recitals, exceptions, conditions, or reservations, as well as covenants respecting the title."

Finding no reason to change our former conclusion reached in this case, the petition for a rehearing is overruled.