Janice RAMER and Burdette Ramer,
Appellants–Petitioners,

v.

Betty SMITH, Appellee–Respondent.

No. 57A04–0804–CV–202.

Court of Appeals of Indiana.

Nov. 17, 2008.

Robert J. Hardy, Thomas & Hardy, LLP, Auburn, IN, Attorney for Appellants.

Grant Vanhorne, Auburn, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issues*

Janice and Burdette Ramer appeal the trial court's special findings of fact and conclusions of law granting interlocutory judgment in favor of Betty Smith and ordering partition of the property in question. The Ramers raise three issues on appeal: 1) whether the trial court erred when it determined that the Ramers, as tenants by the entireties, and Betty each hold a one-half joint tenancy interest in the property; 2) whether the trial court erred when it refused to award the Ramers contribution for value added to the property; and 3) whether the trial court erred when it determined that the property cannot be equitably divided. Concluding that the language of the deed sufficiently evidences intent to create joint tenancy interests in the property, but that the Ramers are not entitled to contribution, we reverse in part and affirm in part. In addition, we remand this case to the trial court to determine whether the property can be equitably divided in light of our holding.

*Facts and Procedural History*

Betty is the mother of Janice. Betty and her husband, Richard, originally owned approximately 78 acres of real estate ("the Estate"). In 1998, the Ramers began construction of a residence on the Estate. Richard assisted the Ramers with excavation work and also provided some equipment for the construction. The Ramers began living in the basement of the uncompleted residence in December of 1998 and have lived there continuously until the present. On May 17, 2000, the Smiths executed a warranty deed ("Deed 1") conveying a 6.60 acre tract of the Estate, including the Ramers' unfinished residence, to the Ramers. The granting clause of Deed 1 reads: "RICHARD W. SMITH and BETTY J. SMITH, husband and wife, ... Conveys and warrants to BURDETTE RAMER and JANICE RAMER, husband and wife...." Appellant's Appendix at 81. However, problems with the conveyance arose involving the local zoning authority. Subsequently, the

Smiths and the Ramers executed a second warranty deed ("Deed 2") on September 6, 2000, with the Smiths conveying a 16.99 acre tract of the Estate and the Ramers conveying the 6.60 acre tract to all four individuals creating a 23.59 acre tract (the "Property"). The granting clause of Deed 2 reads: "RICHARD W. SMITH and BETTY J. SMITH, husband and wife, and BURDETTE RAMER and JANICE RAMER, husband and wife, . . . Conveys and warrants to: RICHARD W. SMITH, BETTY J. SMITH, BURDETTE RAMER, and JANICE RAMER, as Joint Tenants With right [sic] of Survivorship. . . ." Appellant's App. at 74. The same attorney prepared both Deed 1 and Deed 2.

On November 16, 2004, Richard died. The Ramers completed construction of their residence in 2005. On November 17, 2006, Betty filed a petition for partition of the Property. The trial court held a hearing on the petition on January 4, 2008, and issued its Special Findings of Fact, Conclusions of Law and Judgment on February 15, 2008. The trial court concluded that Deed 2 conveyed a one-half joint tenancy interest to the Smiths, which they held as tenants by the entireties, and a one-half joint tenancy interest to the Ramers, which they held as tenants by the entireties. The trial court further concluded that Betty succeeded to Richard's interest in the Property upon his death and therefore the Property should be partitioned one-half to Betty and one-half to the Ramers.

Relying upon the testimony of an appraiser presented by the Ramers, the trial court valued the Property at $308,940.00 [1] consisting of $83,940.00 for the land within the 16.99 acre tract, $39,600.00 for the land within the 6.60 acre tract, and $185,400.00 for the residence on the 6.60 acre tract. The trial court refused to adjust the partition of the Property because of any alleged contributions made by the Ramers. Finally, the trial court concluded that the Property cannot be divided into equal shares of value between Betty and the Ramers without physically dividing the residence,[2] and therefore the trial court appointed a commissioner to sell the property at public sale. The Ramers now appeal.

*Discussion and Decision*

## I. Standard of Review

When a trial court has made special findings of fact, as it did in this case, our standard of review is well settled:

> [A]n appellate court reviews the sufficiency of the evidence in a two-step process. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. An appellate court shall not set aside the findings or judgment unless clearly erroneous and it shall not reweigh the evidence or determine the credibility of witnesses. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous when it is unsupported by the

1. Although footnote one of the trial court's conclusions of law sets the total value as $326,940.00 and Appellants utilize this figure in their brief, the main text of the trial court's conclusions of law, as well as the mathematical computation used by the trial court, show $308,940.00 to be the correct figure.

2. Since the total value of the Property is $308,940.00, each party would be entitled to one-half of the value or $154,470.00. Even if the residence could somehow be awarded to the Ramers without the land upon which it was built, the value of the residence, $185,400.00, still exceeds the one-half share to which they are entitled after partition.

findings of fact and the conclusions relying on those findings.

*Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 158 (Ind.1994) (citations and quotations omitted). However, we evaluate conclusions of law de novo and owe no deference to a trial court's determination of such conclusions. *Hay v. Baumgartner,* 870 N.E.2d 568, 571 (Ind.Ct.App.2007).

## II. Nature of the Estate Conveyed by Deed 2

█ The facts in this case are not in dispute. Therefore, the threshold question is whether Deed 2 created a joint estate among Richard, Betty, Burdette, and Janice as individuals or between Richard and Betty, as husband and wife, and Burdette and Janice, as husband and wife, with each couple taking as tenants by the entireties. If each person held an individual interest as a joint tenant, then upon Richard's death, his share devolved to Betty, Burdette, and Janice equally, leaving each with an undivided one-third share in joint tenancy. Conversely, if each couple held their respective share as tenants by the entireties, then upon Richard's death, his share devolved to Betty alone, leaving her with an undivided one-half share and the Ramers with an undivided one-half share.

█ The rule regarding conveyances of real estate to husband and wife is well established in this state. *See Simons v. Bollinger,* 154 Ind. 83, 86, 56 N.E. 23, 24 (1900). Where the deed conveying property to a husband and wife contains no qualifying words, the grantees take and hold the estate as tenants by the entirety. *Richards v. Richards,* 60 Ind.App. 34, 38,

110 N.E. 103, 104 (1915). This is so even where the husband and wife are not designated as such in the deed. *See Hulett v. Inlow,* 57 Ind. 412, 414, 1877 WL 6862, at \*2 (1877); *Richards,* 60 Ind.App. at 38, 110 N.E. at 104. In a conveyance to husband and wife, "all presumptions must be indulged, and all doubts resolved, against [joint] estates, and in favor of estates by the entireties." *Simons,* 154 Ind. at 87, 56 N.E. at 24–25. However, a "husband and wife may take real estate as joint tenants or tenants in common, if the instrument creating the title use[s] apt words for the purpose." *Thornburg v. Wiggins,* 135 Ind. 178, 185, 34 N.E. 999, 1001 (1893); *see also Hadlock v. Gray,* 104 Ind. 596, 598, 4 N.E. 167, 168 (1886) ("[I]f at any time a joint tenancy or tenancy in common is desired to be created between man and wife, a joint estate will be treated as such, if that intention is clearly expressed in the deed or will.") (citation omitted).

█ Here we are faced not with a simple conveyance to husband and wife, but with a conveyance to two married couples. At common law, a husband and wife are one person. *Thornburg,* 135 Ind. at 181, 34 N.E. at 1000. As such, when real estate vests in them, they take the entirety as one person.[3] *Id.* By contrast, when real estate vests in two individuals as joint tenants, each is seised of an undivided one-half interest and of the whole.[4] *Simons,* 154 Ind. at 84, 56 N.E. at 24. Our supreme court has held that when land is conveyed to a husband and wife jointly with a third party, the husband and wife will take an undivided one-half interest as tenants by the entireties and the third

---

3. Traditionally, the law expressed the nature of a tenancy by the entirety with a French phrase, "per tout et non per my," which translates as "by the whole and not by the half." *See Black's Law Dictionary* 1181 (8th ed.2004).

4. Traditionally, the law expressed the nature of a joint tenancy with the French phrase, "per my et per tout," which translates as "by the half and by the whole." *See Black's Law Dictionary* at 1177.

party will take an undivided one-half interest as a joint tenant. *Hulett,* 57 Ind. at 414, 1877 WL 6862, at \*2; *see also Becker v. MacDonald,* 488 N.E.2d 729, 732 (Ind. Ct.App.1986).

▮ By logical extension, when land is conveyed jointly to two married couples, each couple takes an undivided one-half interest as tenants by the entireties, which they share as joint tenants with the other couple. See, *e.g., Price v. Pestka,* 66 N.Y.S. 297, 298, 54 A.D. 59, 59 (N.Y.App. Div.1900) (holding that since husband and wife are, in law, one person, a grant to two couples was of an undivided one-half of the estate to each of the two parties); *Prario v. Novo,* 168 Misc.2d 610, 645 N.Y.S.2d 269, 271 (N.Y.Sup.Ct.1996) ("A grant to two married couples as tenants by the entireties results in two tenancies by the entirety, with each couple owning one-half."). However, it also stands to reason that just as a deed may convey real estate in joint tenancy to a single married couple through use of express language, so a deed may convey real estate in joint tenancy to four individuals who happen to also be two married couples. Therefore, we hold that, as a general rule, where a deed conveys real estate to two married couples jointly, each couple takes an undivided one-half interest as tenants by the entireties, which they share as joint tenants with the other couple. However, a conveyance to two married couples will be treated as a joint tenancy or a tenancy in common between all four individuals if such an intention is clearly expressed in the deed.

Starting with the presumption that Deed 2 conveyed an undivided one-half interest in the Property to the Smiths and the Ramers as tenants by the entireties, we must consider whether Deed 2 contains a sufficiently clear expression of intent to create a joint tenancy between Richard, Betty, Burdette, and Janice as individuals and not as married couples. The grantor clause of Deed 2 describes the parties as "RICHARD W. SMITH and BETTY J. SMITH, husband and wife, and BURDETTE RAMER and JANICE RAMER, husband and wife." By contrast, the grantee clause describes the parties as "RICHARD W. SMITH, BETTY J. SMITH, BURDETTE RAMER, and JANICE RAMER, as Joint Tenants With [R]ight of Survivorship." Prior to Deed 2, the Smiths owned the 16.99 acre tract as tenants by the entireties and the Ramers owned the 6.60 acre tract as tenants by the entireties.[5] As a result, the grantor clause of Deed 2 lists the parties grouped as husband and wife. However, this language is not repeated in the grantee clause. Rather, the parties are named individually in a list format implying equal treatment.[6] Therefore, the face of the deed itself evidences intent to treat the parties differently in their capacities as grantees than in their capacities as grantors.

In addition, the grantee clause of Deed 2 contains the phrase "as joint tenants with right of survivorship." Our supreme court has repeatedly held the phrase "in joint

---

**5.** The granting clause of Deed 1, drafted by the same attorney who drafted Deed 2, reads "RICHARD W. SMITH and BETTY J. SMITH, husband and wife, ... Conveys and warrants to BURDETTE RAMER and JANICE RAMER, husband and wife...." The fact that the grantee clauses differ from Deed 1 to Deed 2 despite being drafted by the same attorney provides additional evidence of intent to cre-

ate a different type of estate, although this additional evidence is not necessary to our decision because we find sufficient evidence of intent on the face of Deed 2 alone.

**6.** Compare the grantor clause, Richard and Betty, as husband and wife, and Burdette and Janice, as husband and wife, with the grantee clause, Richard, Betty, Burdette, and Janice.

tenancy" in a conveyance is sufficient to create a joint tenancy between a married couple rather than a tenancy by the entireties. *See Simons*, 154 Ind. at 87, 56 N.E. at 25 (holding that the word "jointly" alone does not create a joint tenancy but distinguishing cases where the phrase "in joint tenancy" was used and referring to "in joint tenancy" as the "very language of the books" to create a joint tenancy); *Wilken*, 144 Ind. 1, 5–6, 41 N.E. 68, 69 (1895) (holding the phrase "Samuel Gordon and Phoebe Gordon, his wife, in joint tenancy" created a joint tenancy and not a tenancy by the entirety); *Thornburg*, 135 Ind. at 187, 34 N.E. at 1002 (holding where deed contained the phrase "in joint tenancy" that "[t]hese words appear in the granting clause of the deed conveying the land in question, and the estate accepted and held by grantees is thereby limited, and they hold, not by entireties, but in joint tenancy."). In addition, Indiana Code section 32–17–2–1(c) provides that in order to create a joint tenancy, a conveyance must express that the grantees hold the land "in joint tenancy and to the survivor of them" or the intent to create an estate in joint tenancy must manifestly appear from the "tenor of the instrument." [7]

Although the phrase "as joint tenants" in Deed 2 differs slightly from the "in joint tenancy" phrase used in previous cases, it has the same meaning. *See Black's Law Dictionary* at 855 (cross-referencing definition of "joint tenant" to the definition of "joint tenancy"). In addition, the phrase "with right of survivorship," the placement of the names in a list implying equal treatment, and the omission of the phrase "husband and wife" from the grantee clause

after having been used in the grantor clause all indicate intent to create a joint tenancy. Therefore, we hold that the granting clause of Deed 2 evidences intent by the grantors to create a joint tenancy among Richard, Betty, Burdette, and Janice as individuals and not two estates by the entireties. As a result, Betty, Burdette, and Janice each hold a one-third undivided interest in the Property as joint tenants.

### III. The Right to Contribution

The Ramers next argue they are entitled to contribution for value added to the Property. This court has expressly held equitable adjustment of the equal shares of joint tenants is improper. *Cunningham v. Hastings*, 556 N.E.2d 12, 14 (Ind.Ct.App.1990). When a joint tenancy is created, each tenant acquires an equal right to share in the enjoyment of the land during their lives and each tenant is entitled to an equal share upon partition. *Id.* at 13–14. "Equitable adjustments to cotenants' equal shares are allowed when the cotenants hold the property as tenants in common, not when they hold as joint tenants." *Id.* at 14 (emphasis added).

The Ramers argue that they alone contributed to the construction of their residence on the Property and that the value of the Residence should be awarded to them as an offset prior to partitioning the property. In support of their argument, the Ramers cite *Willett v. Clark*, 542 N.E.2d 1354 (Ind.Ct.App.1989). *Willett* does not apply in this case, because it dealt with partition of property held by two individuals as tenants in common.[8] The

---

**7.** Indiana Code section 32–17–2–1 does not apply to conveyances made to husband and wife, *see* Ind.Code § 32–17–2–1(a)(3), and as such is not controlling in this case. However, we find it instructive in the determination of

sufficient language to expressly limit an estate by the entireties to a joint estate.

**8.** The Ramers also cite a case from one of our sister states and an American Jurisprudence Second article as authority in support of their

Ramers claim entitlement to the entire value of the residence despite the fact that construction of the residence began while the Smiths, alone, owned the Property and continued while the Ramers solely owned the 6.60 acre tract upon which the residence sits. At the time of the creation of the joint tenancy, the residence was at least partially complete; therefore, the Ramers could not have "contributed" the already completed portion of the residence during the period of joint tenancy. Additionally, the Ramers claim that "Betty Smith has contributed **nothing** to the value of the [Property]." Appellant's Brief at 6 (emphasis original). In fact, the record shows the Smiths gave the 6.60 acre tract to the Ramers as a pure gift, Richard assisted the Ramers in excavating the site for construction, and Richard supplied equipment to the Ramers for use in construction. It can hardly be said that the Smiths contributed nothing to the value of the Ramers' residence. In any event, the Ramers, as joint tenants, are not entitled to equitable adjustment of their equal shares upon partition.

### III. Equitable Division of the Property

 If the trial court determines that "the land to be partitioned cannot be divided without damage to the owners, the court may order the whole or any part of the premises to be sold . . . ." Ind.Code § 32–17–4–4(d). The trial court incorrectly determined that Betty and the Ramers were each entitled to one-half of the value of the Property upon partition. Since one-half of the total appraised value of the Property is less than the appraised value of the residence alone, the trial court determined that it could not divide the Property without damage to the owners and ordered the Property to be sold by a commissioner. Because we reverse the trial court's judgment and hold that Betty is entitled to one-third and the Ramers are entitled to two-thirds of the value of the Property, it is at least mathematically possible to divide the Property while leaving the residence intact.[9] However, this would require reducing the original 6.60 acre tract and would likely raise similar zoning issues as those that led to the creation of Deed 2 in the first place. We are not in a position to determine the proper method of partition and therefore remand this issue to the trial court to determine the proper method of partitioning the Property.

### Conclusion

Deed 2 created a joint tenancy among Richard, Betty, Burdette, and Janice as individuals. Therefore, we reverse the trial court and hold that Betty, Burdette, and Janice each hold an undivided one-third share in the Property as joint tenants. However, we affirm the trial court's judgment denying the Ramers contribution for value added to the Property. Finally, we remand the issue of the correct method of partitioning the property to the trial court for further findings in light of this opinion.

Reversed in part, affirmed in part, and remanded.

NAJAM, J., and MAY, J., concur.

---

argument. We remind the Ramers that neither of these sources represents controlling authority in Indiana and, while they may be instructive, they should not be cited as direct authority.

9. Since the total appraised value of the Property is $308,940.00, Betty is entitled to $102,980.00 and the Ramers are entitled to $205,960.00. The residence has an appraised value of $185,400.00. Therefore, the trial court could award the Ramers the residence plus roughly three and one-half acres and award Betty roughly seventeen acres to arrive at the proper distribution.